# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

TRAFALGAR CORPORATION, et al.,

      Plaintiffs,      :      Case No. 3:05-cv-084

  -vs-      Chief Magistrate Judge Michael R. Merz

      :

MIAMI COUNTY BOARD OF
 COUNTY COMMISSIONERS, et al.,

      Defendants.

## DECISION AND ORDER

This case is before the Court on motions for summary judgment of Defendants Concord Township, Miami County, Ohio (Doc. No. 11) and the Board of County Commissioners of Miami County, Ohio (Doc. No. 22).

The parties have unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. §636(c) and the case has been referred on that basis (Doc. No. 36).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn

therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;  the requirement is that there be no *genuine* issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law.  Fed. R. Civ. P. 50).  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).  If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate.  *Id*.  The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996).  "On summary judgment," moreover, "the inferences to be drawn from the underlying

facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323;  *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted).  If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

The facts set forth in this Decision are admitted or established by evidence competent under Fed. R. Civ. P. 56(e) and not controverted by opposing competent evidence.

**Positions of the Parties**

Plaintiffs brought this action under 42 U.S.C. §1983[1] to recover damages and injunctive relief for the taking of their property in alleged violation of the Fifth and Fourteenth Amendments

---

[1]The Complaint mentions 42 U.S.C. §1981 and 1982 as creating jurisdiction for this case (Complaint ¶ 5).  No claims are stated which actually purport to come within either of those two sections.

to the United States Constitution (First Cause of Action, Complaint, Doc. No. 1, ¶¶ 27-29), to recover damages and injunctive relief for denial of equal protection in violation of the Fourteenth Amendment (Second Cause of Action, *Id.* at ¶¶ 38-39), and to obtain declaratory judgment of these violations (Third Cause of Action, *Id.* at ¶43.)

Plaintiff Trafalgar Corporation owns a tract of land at 1619 Monroe-Concord Road in Concord Township, Miami County, Ohio (the "Property"). It obtained the land by deed from the individual Plaintiffs or their predecessors in title; the individual Plaintiffs are sole owners of the shares of Trafalgar (Complaint, Doc. No. 1, at ¶¶ 1-2). In 1957 the Miami County Board of Commissioners adopted a zoning resolution, later amended in 1965, which governs the unincorporated areas of Miami County, including the Property. *Id.* at ¶ 7. The resolution requires approval by the Miami County Planning Commission of residential building lots with road frontage less than 125 feet. *Id.* at ¶ 8. Plaintiffs allege that they have obtained the requisite approvals from the Miami County Planning and Zoning Commission and zoning changes for the Property from A-2 (General Agricultural) to R-1 (Single Family Residential) from the Defendant Board of County Commissioners in 1995, 1997, 1999, 2000, 2001, 2002, 2003, and 2004. *Id.* at ¶ 13. However, each time the changes have been overturned by the voters after they were placed on a referendum ballot as a result of petitions.[2] *Id.* at ¶14.

The Property is currently rented to others for use in farming, but produces rent which is only roughly equal to the property taxes. *Id.* at ¶ 20. Plaintiffs aver that they instituted state court proceedings, asserting no federal claims, to obtain compensation for the taking of the land, but received no relief. They aver that the Ohio Supreme Court held that farming the land was not

---

[2]At the time of the Complaint, the petitions relating to the 2004 approvals had been forwarded to the Board of Elections, but the election had not yet been held (Complaint, Doc. No. 1, at ¶14). The results of the election, if it has been held since the Motions were filed, has not been revealed to the Court.

profitable, but that they "could conceivably seek the residential development they requested in 1969." *Id*. at 23. Subsequent to the Ohio Supreme Court decision, they assert, Defendant County Commissioners have refused to permit development under the 1969 plan. *Id*. at ¶ 24.

Plaintiffs assert

1. that the repeated refusals to rezone have resulted in a taking of the property. *Id*. at ¶27.

2. that the refusal of the Commissioners to approve development under the 1969 plan also violates their Fifth and Fourteenth Amendment rights. *Id*. at ¶ 29.

3. that the Property is similarly situated to surrounding property and that therefore refusal to allow re-zoning of the Property for residential development denied Plaintiffs equal protection of the laws. *Id*. at ¶¶ 33-39.

Defendant Concord Township sought summary judgment on May 5, 2005, shortly after answering. Concord asserts that all of Plaintiffs' claims are barred by the doctrine of *res judicata*, either by issue or claim preclusion (Motion, Doc. No. 11, at 10), and that Plaintiffs' claims with respect to the last referendum are not ripe because the election had not yet been held. *Id*. at 16-17. Defendant Miami County Board of County Commissioners filed their Motion for Summary Judgment in August, 2005, also asserting Plaintiffs' claims are barred by *res judicata* (Doc. No. 22).

**Analysis**

Defendants claim *res judicata* effect from two prior state court sets of proceedings, a declaratory judgment action brought in the Miami County Common Pleas Court in June, 1999, and a mandamus action brought in the Miami County Court of Appeals in May, 2002. The relevant prior litigation history is analyzed by the Ohio Supreme Court in its decision *State, ex rel. Trafalgar Corp., v. Miami County Board of County Commissioners*, 104 Ohio St. 3d 350, 819 N.E. 2d 1040

(2004)(hereinafter "*Trafalgar IV*").

> In June 1999, Trafalgar filed a complaint in the Miami County Court of Common Pleas for a judgment declaring R.C. 303.12 unconstitutional and rezoning the property to R-1AA, as requested by Trafalgar in 1995, 1997, and 1999. R.C. 303.12(H) permits qualified voters residing in the unincorporated area of the township to petition for a referendum on a zoning amendment approved by a board of county commissioners.
>
> In September 2001, after the trial court denied Trafalgar's claims, the court of appeals affirmed. Trafalgar Corp. v. Miami Cty. Bd. of Commrs. (Sept. 7, 2001), Miami App. No. 2001 CA 6, 2001 Ohio App. LEXIS 3946, 2001 WL 1018620. The court of appeals held that the trial court had not erred in determining that (1) the planning commission's 1969 approval of Bruce Geisinger's plan to develop 53 residential building lots on the property was conditional and not a final approval, (2) the electors' use of referendum to deny the requested zoning changes did not violate Trafalgar's right to substantive due process, (3) Trafalgar's takings claim was not cognizable in declaratory judgment, (4) the right of referendum is not an unconstitutional delegation of legislative power to township electors, and (5) the 1995, 1997, and 1999 board approvals of Trafalgar's requests for a zoning change constituted legislative actions, which were subject to referendum. We did not accept Trafalgar's appeal from the court of appeals judgment for review. Trafalgar Corp. v. Miami Cty. Bd. of Commrs.,(2001), 94 Ohio St. 3d 1411, 759 N.E.2d 787.
>
> In 2000, 2001, 2002, and 2003, the board again approved Trafalgar's zoning change requests. Concord Township electors rejected each zoning amendment in separate referenda.
>
> On May 10, 2002, appellants, Trafalgar and Bruce and Mark Geisinger, filed a complaint in the Court of Appeals for Miami County for a writ of mandamus to compel the Miami County Board of Commissioners and Concord Township to approve a zoning change for the property from A-2 General Agricultural to R-1AA Single Family Residential. Trafalgar and the Geisingers also sought a writ of mandamus to compel the board and Concord Township to commence appropriation proceedings to determine the amount by which the value of appellants' property had been diminished by the repeated rejection of the zoning amendments by referenda.
>
> After the court of appeals dismissed Concord Township from the case, the remaining parties moved for summary judgment. Trafalgar and the Geisingers attached the affidavits of Bruce and Mark

Geisinger to their motion. In Bruce Geisinger's affidavit, he made several conclusory statements, including that the previously approved residential land use was "entirely consistent with" the county's comprehensive development plan and approved land uses in the immediate vicinity of the proposed development.

Mark Geisinger made comparable conclusory statements in his affidavit, e.g., "deprivation of use for residential purposes of the subject property constitutes a substantial and unreasonable interference with the right to use and develop the subject property," "refusal to allow the subject land use is in no way related to a substantial public purpose, is unduly harsh on the landowner and denies the landowner all economically viable use of the land," and "the use of the referendum power to preempt land use approval for residential purposes has been undertaken by petitioners and electors in unincorporated Concord Township for the express and specific malicious purpose of stifling the subject development for residential purposes, in a fashion which is not rationally related to any plan of development or use in the vicinity."

Mark Geisinger further stated in his affidavit that "the only use of the subject property available to the landowner is farming, which produces a per acre payment by the tenant farmer to the landowner which totals a sum equaling no more than the cost of real estate taxes on the subject property."

The board attached three affidavits to its motion. Kenneth A. LeBlanc, Director of Regional and Community Planning for the Miami Valley Regional Planning Commission, oversaw for the creation of the comprehensive development plan for Miami County. Based on the plan, the commission found that the area including Trafalgar's property was rated as prime farm land, which is the most highly rated type of farm land in Ohio.

LeBlanc noted that Trafalgar's property is surrounded by both agricultural and residential uses and was thus equally suitable for both uses. Residential development would increase traffic and pollution and impose additional burdens on utilities and government services. Based on these specific facts, LeBlanc concluded that the retention of the current A-2 General Agricultural zoning classification on Trafalgar's property was consistent with Miami County's comprehensive plan and was reasonable and legitimately related to "the interests of preservation of rural areas in the county and the limitation of over-development of rural areas in Miami County."

In two other affidavits attached to the board's summary judgment motion, Miami County residents residing on farms neighboring

>  Trafalgar's property stated that they had been involved in the referendum efforts to defeat appellants' attempts to rezone the property. Their specified reasons for opposing rezoning were (1) "preservation of farmland from the encroachment of residential and urban growth from the City of Troy," (2) concerns regarding "increased traffic, noise, and pollution necessarily accompanying increased residential development," (3) "concerns about increased burden on the local water supply (ground water), including concerns about overall water consumption and water pollution," (4) "concerns about the increased burden on local governmental services, including emergency services and schools," and (5) "preservation of the rural aesthetic * * * that is inconsistent with increased residential housing." They also stated that appellants were growing corn on the property, and that appellants could divide their property into separate 10-acre lots for resale without any zoning change.
>
>  On January 16, 2004, the court of appeals denied appellants' motion for summary judgment, granted the board's motion for summary judgment, and denied the writ of mandamus. The court of appeals determined that res judicata barred appellants' claim for a writ of mandamus to compel the board to approve the requested zoning change.
>
>  The court of appeals further held that appellants' claim for a writ of mandamus to compel the board to institute an appropriation action lacked merit. Appellants had "failed to produce competent evidence to establish that the current zoning has deprived [them] of all economically viable uses of the land."

104 Ohio St. 3d at 351-53.

Based on these facts, the Ohio Supreme Court determined that Plaintiffs' substantive due process challenge to the referenda in the mandamus action were barred under the Ohio doctrine of *res judicata* by the final judgment in the declaratory judgment action. *Id*. at 354.[3] This ruling was expressly applied to the 2000, 2001, 2002, and 2003 referenda, even though they had not occurred when the declaratory judgment action was filed, because no different issues were raised. *Id*.

---

[3]"'Under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."' State ex rel. Denton v. Bedinghaus, 98 Ohio St. 3d 298, 2003 Ohio 861, 784 N.E.2d 99, P14, quoting Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 1995 Ohio 331, 653 N.E.2d 226, syllabus. For a previous declaratory judgment, res judicata precludes only claims that were actually decided. State ex rel. Shemo v. Mayfield Hts. (2002), 95 Ohio St.3d 59, 69, 2002 Ohio 1627, 765 N.E.2d 345, motion for reconsideration granted in part on other grounds, 96 Ohio St. 3d 379, 2002 Ohio 4905, 775 N.E.2d 493." *Id*.

With respect to that portion of the mandamus action which sought to compel the Board of County Commissioners to commence condemnation proceedings, the court held mandamus was the proper remedy under Ohio law, citing *State ex rel. Preschool Dev., Ltd. v. Springboro,* 99 Ohio St. 3d 347, 792 N.E.2d 721 (2003). However, summary judgment for the County was found proper because

> Appellants failed to present sufficient evidence, however, to raise a genuine issue of material fact. At best, they presented evidence that showed that their current use of the property -- farming -- is not profitable. But the board presented evidence that the current A-2 General Agricultural zoning classification permitted other nonagricultural uses, including the division of the property into separate 10-acre lots for resale. In fact, appellants' own evidence established that their 1969 preliminary development plan included residential building lots "with not less than 125 feet of frontage." Under the county's zoning resolution and the A-2 General Agricultural classification, as long as these lots had not less than 125 feet of frontage, no zoning change was required. Therefore, appellants could conceivably seek the residential development they requested in 1969.

104 Ohio St. 3d at 355. The court also analyzed the case under *Penn Cent. Transp. Co. v. New York* 438 U.S. 104 (1978):

> [A]lthough appellants do not assert that we need to apply the takings analysis set forth in Penn Cent. Transp. Co. v. New York (1978), 438 U.S. 104, 98 S.Ct. 2646, 57 L. Ed. 2d 631, see Shemo, [*State ex rel. Shemo v. Mayfield Hts*., 95 Ohio St.3d 59, 765 N.E.2d 345(2002)] 96 Ohio St.3d 379, 2002 Ohio 4905, 775 N.E.2d 493, at PP8-11,,their summary judgment evidence is also insufficient to raise a genuine triable issue under the Penn Cent. test.

104 Ohio St. at 355.

Plaintiffs first seek to avoid summary judgment on their claims against Concord Township by relying on Fed. R. Civ. P. 56(f). They assert that Sue Campbell is both one of the Concord Township Trustees and a major organizer of the referenda campaigns which have resulted in their defeat at the polls. They seek to engage in discovery relating to these assertions prior to a ruling on

the summary judgment motion.

Plaintiffs' reliance on Fed. R. Civ. P. 56(f) is misplaced. Ms. Campbell is not a defendant in this action, nor have Plaintiffs sought to make her one. In any event, the Rule 56(f) relief was sought May 31, 2005, and Plaintiffs have not brought to the Court's attention any discovered evidence which would make Concord Township liable on the basis of Ms. Campbell's activities in circulating referenda petitions, assuming they occurred. Although the discovery period has not closed, Plaintiffs have had nearly ten months since Concord's summary judgment motion was filed to discover any relevant evidence.

Plaintiffs assert that their claims are not barred by either the claim or issue preclusion branch of *res judicata* because:

1. By virtue of *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), their takings claim was not ripe for federal adjudication until they had completed the mandamus action (Plaintiffs' Memorandum in Opposition to Concord Township's Motion for Summary Judgement ("Memo Contra Concord SJM"), Doc. No. 13, at 6-8; Plaintiffs' Memorandum in Opposition to Miami County's Motion for Summary Judgment (Memo Contra Miami County SJM"), Doc. No. 27, at 6-11) and

2. Their equal protection claim has never been litigated in the state courts (Memo Contra Concord SJM at 9; Memo Contra Miami County SJM at 11-13).

Federal courts in subsequent litigation are obliged to give prior state court judgments the same effect those judgments would be given in the courts of the rendering State. 28 U.S.C. §1738, *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985); *Migra v. Warren City School District Board of Edn.,* 465 U.S. 75, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); *Gutierrez v. Lynch*, 826 F. 2d 1534 (6th Cir. 1987); *McNasby v. Crown Cork*

*and Seal Co., Inc.,* 888 F. 2d 270 (3d Cir. 1989).

**Plaintiffs' First Cause of Action**

The Supreme Court had occasion to construe §1738 in the takings claim area last term in *San Remo Hotel, L.P., v. City and County of San Francisco*, ___ U.S. ___, 125 S. Ct. 2491 (2005). There the petitioners had argued, as Plaintiffs argue here, that because *Williamson* held that takings claims are not ripe until the State has failed to provide compensation, federal courts should recognize an exception to §1738 to allow parties a federal forum for their federal takings claim. The Supreme Court rejected that argument and the authority on which it was based, *Santini v. Connecticut Hazardous Waste Management Service*, 342 F.3d 118 (2nd Cir. 2003)[4]. *San Remo,* 125 S. Ct. at 2495. The Court also adopted the broader proposition that federal courts are not authorized to recognize exceptions to §1738 to allow a federal forum for federal claims generally.

Since no exception to §1738 applies to this case, the Court must determine what effect the Ohio courts would give to their prior judgments. The relevant Ohio claim preclusion doctrine is set forth in *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 653 N.E. 2d 226 (1995):

> In Ohio, a party seeking to invoke the doctrine of *res judicata* must prove four elements: (1) a prior final, valid decision on the merits by a court of competent jurisdiction;(2) a second action involving the same parties or their privies, as the first;(3) a second action raising claims that were or could have been litigated in the first action; and(4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Ater v. Follrod,* 238 F. Supp. 2d 928, 937 (S.D. Ohio 2002)(Holschuh, J.), quoting *In re Fordu*, 201

---

[4] Plaintiff also rely heavily on *Santini*. (Memo Contra Concord SJM at 9-11).

F.3d 693, 703-04 (6th Cir. 1999)(construing Ohio law).[5] There is no doubt that the prior state court proceedings were before courts of competent jurisdiction, decided on their merits, among the same parties who appear here or their privies.

Under Ohio law, mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged. *State ex rel. Shemo v. City of Mayfield Heights*, 95 Ohio St. 3d 59, 63, 765 N.E. 2d 345 (2002), *citing State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.*, 92 Ohio St. 3d 529 at 533, 751 N.E.2d 1032 (2001). In *Shemo*, interpreting the United States and Ohio Constitutions together, the court held that "application of land-use regulations to a particular piece of property is a taking only 'if the ordinance does not substantially advance legitimate state interests * * * or denies an owner economically viable use of his land.' " 95 Ohio St. 3d at 63, citing *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 126 (1985), quoting *Agins v. Tiburon*, 447 U.S. 255, 260 (1980), and *Keystone Bituminous Coal Assn. v. DeBenedictis,* 480 U.S. 470, 485 (1987). That is, it found the *Agins* test to be disjunctive: a party can prove an unconstitutional taking under either the Ohio or United States Constitution if the party can show that zoning does not advance a legitimate state interest **or** that it denies an owner economically viable use of his land.

In applying *Shemo* to this controversy, the Ohio Supreme Court held that the Plaintiffs substantive due process/takings claim – to wit, that the zoning does not advance a legitimate state interest – was barred by *res judicata* from the prior declaratory judgment action. *Trafalgar IV*, 104 Ohio St. 3d at 355. As to the second prong of the *Agins* test – to wit, that the zoning denies a

---

[5]Plaintiffs rely on *Westwood Chemical Co., Inc., v. Kulick,* 656 F. 2d 1224, 1227 (6th Cir. 1981), for the proposition that Ohio *res judicata* law requires proof of identity "of the evidence necessary to sustain each action." (Memo Contra Miami County SJM at 5.) Their reliance is misplaced. The *Westwood* court does not purport in any way to be interpreting Ohio *res judicata* law.

landowner all economically viable use of the land – the court held that Plaintiffs had failed to present sufficient evidence to raise a genuine issue of material fact. *Id.*

Plaintiffs now assert, however, that Ohio and federal takings jurisprudence are not co-extensive, relying on *Lingle v. Chevron U.S.A., Inc.,* ___ U.S. ___, 125 S. Ct. 2074 (2005). In *Lingle,* the Court held that the first prong of *Agins* was properly a substantive due process claim rather than a takings claim, noting that *Agins* first prong had relied on classic zoning due process jurisprudence, *Nectow v. Cambridge*, 277 U.S. 183, (1928), and *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926). The Court clarified that Takings Clause claims could be shown only (1) where there is a permanent physical invasion of property (*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking); (2) regulations completely deprive an owner of all economically beneficial uses of the property (*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014 (1992); or (3) takings governed by *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978).

Plaintiffs seem to argue that *Lingle* broadens takings jurisprudence, but the Court concludes it narrows *Agins*. That is to say, when the Ohio Supreme Court decided *Trafalgar IV*, it followed the then-standard two-prong interpretation of *Agins*, rejecting Plaintiffs' claims under both, but the United States Supreme Court has now eliminated the first prong altogether.

Analyzing Plaintiffs' takings claim under *Lingle*, it is precluded by the final judgment in *Trafalgar IV*. There is no allegation in the Complaint that Miami County has effected any permanent physical invasion of the Property and the Ohio Supreme Court held that Plaintiffs had not produced sufficient evidence to avoid summary judgment on either a deprivation of all economically beneficial uses of the property theory or on a *Penn Central* theory.

Plaintiffs argue that they have preserved their federal takings claim for litigation in this

action because they "did not opt to include their federal claim in their state court action. Instead, they limited their state court action to the post-deprivation remedy provided by Ohio, the request for a writ of mandamus" (Memo Contra Miami County SJM at 10). Plaintiffs have confused the right sought to be vindicated – not taking without just compensation – with the remedy made available by Ohio for vindication of that right – petition for writ of mandamus. *Shemo, supra*, makes it clear that the Ohio remedy of mandamus is available to vindicate claims arising under both the Ohio and United States Constitutions for taking of property without just compensation. Under Ohio *res judicata* doctrine, the question is not what claims Plaintiffs **opted** to include in their mandamus action, but what claims they could have included. Because they could have included any federal or state takings claim which had then arisen, they are barred by the judgment in *Trafalgar IV* from litigating any such claim in this case, whether against Miami County or Concord Township.

At ¶ 24 of the Complaint, Plaintiffs assert that "[s]ubsequent to the Ohio Supreme Court's decision, the Miami [County] Board of Commissioners refused to allow Geisinger/Trafalgar to develop the land under the 1969 plan." The motion papers do not make clear the relationship of this allegation to the takings claim. In particular, the Ohio Supreme Court noted that lots with greater than 125 foot frontage did not require a zoning change and thus presumably would not be subject to the referendum process which has frustrated Plaintiffs' development efforts in the past. However, neither the Complaint nor the motions papers make clear what kind of permission Plaintiffs needed to proceed with the 1969 plan, whether they assert that denial of that permission denies them any economically viable use of the land, and so forth. The Complaint as pled does not state a claim for relief on a takings basis which has arisen subsequent to the decision in *Trafalgar IV*.

**Plaintiffs' Second Cause of Action**

In their second claim for relief, Plaintiffs assert that much of the surrounding property is zoned residential and that a particular property in Concord Township was rezoned residential on January 26, 2005. The assert that the Property is similarly situated to other property in the Township which is zoned residential and that the disparate treatment of the Property is "not reasonably related to a legitimate government interest" (Complaint, Doc. No. 1 at ¶¶ 34-37).

Concord Township seeks summary judgment on this claim on the basis of the issue preclusion branch of *res judicata* (Concord SJM, Doc. No. 11, at 11-14). 28 U.S.C. §1738 also governs this Court's analysis of issue preclusion claims based on Ohio judgments. The law of issue preclusion in Ohio is as follows:

> Collateral estoppel within the context of *res judicata* has been explained by this court to be preclusion of the relitigation in a second action of an issue or issues that have been actually and necessarily litigated and determined in a prior action. *Whitehead* v. *Gen. Tel. Co.*, 20 Ohio St. 2d 208, 254 N.E. 2d 10 (1969). In *Whitehead,* the court, at page 112, stated:
>
>> The second aspect of the doctrine of *res judicata* is 'collateral estoppel.' While the merger and bar aspects of *res judicata* have the effect of precluding a plaintiff from relitigating the same cause of action against the same defendant, the collateral estoppel aspect precludes the relitigation, in a second action, of *an issue* that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action. Restatement of the Law, Judgments, Section 45, Comment (c), and Section 68(2); *Cromwell* v. *County of Sac*, 94 U.S. 351 (1876).
>
> In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." (Emphasis *sic.* )
>
> Case law in Ohio concerning the general doctrine of *res judicata* has long ago established the general principle that material facts or questions which were in issue in a former suit, and were there judicially determined by a court of competent jurisdiction, are conclusively settled by a judgment therein so far as concerns the

> parties to that action and persons in privity with them. See, *e.g., Norwood* v. *McDonald*, 142 Ohio St. 299 (1943); *State, ex rel. Ohio Water Service Co.* v. *Mahoning Valley Sanitary Dist.*, 169 Ohio St. 31(1959); *Grant* v. *Ramsey*, 7 Ohio St. 157 (1858); *Conold* v. *Stern*, 138 Ohio St. 352 (1941); *Schimke* v. *Earley*, 173 Ohio St. 521 (1962); *Hixson* v. *Ogg* (1895), 53 Ohio St. 361 (1895); *Massillon Sav. & Loan Co.* v. *Imperial Finance Co.* (1926), 114 Ohio St. 523 (1926).

*Goodson v. McDonough Power Equipt.*, 2 Ohio St. 3d 193, 443 N.E. 2d 978 (1983).

In opposing Concord Township's issue preclusion defense, Plaintiffs confuse that defense with claim preclusion: "It is important to note that Plaintiff's [sic] claim for equal protection has not been previously litigated." (Memo Contra Concord SJM, Doc. No. 13 at 9.) Concord Township does not assert that Plaintiffs have previously litigated their equal protection claim, but rather that several issues critical to that claim have been litigated and decided adversely to the Plaintiffs.

The Court agrees. In its Decision and Entry of August 8, 2003, the Miami County Court of Appeals decided that, because the Property was subject only to the unincorporated territory zoning resolution of Miami County and not to any zoning adopted by Concord Township, the Township was not a proper party to the mandamus action (Copy attached as Exhibit A to Doc. No. 11.) Apparently this ruling was never appealed to the Ohio Supreme Court, which noted in *Trafalgar IV* that the Township had been dismissed as a party, but did not note any issue about that dismissal. 104 Ohio St. 3d at 352. All of the prior judgments in the state proceedings have found that the relevant zoning actions have been taken and could only be taken by the Miami County Board of County Commissioners and by the voters of Concord Township, acting in the referenda actions. The same state court judgments which bar liability against Concord Township on the takings claims also bar liability against it on the equal protection claim.

Miami County's summary judgment motion on the equal protection claim depends on claim preclusion, rather than issue preclusion. Plaintiffs note that they

>did not assert an equal protection claim in their mandamus action. They did, however, allege a violation of the equal protection clause in their original suit, filed in the Miami County Court of Common Pleas. As previously described, that equal protection claim alleged that the Ohio statute providing for the referendum that was used to prevent rezoning of the property, R.C. 303.12, violated Plaintiffs' right to equal protection by requiring those in the unincorporated area of a township to meet the additional requirement of overcoming a referendum in order to have their property rezoned.
>
>>This is a separate and distinct argument from that asserted by the Plaintiffs in the instant matter. In the case sub judice, the Plaintiffs do not argue that R.C. 303.12 unconstitutionally violates the equal protection clause of the Fourteenth Amendment. Rather, Plaintiffs here argue Defendants have violated the equal protection clause of the Fourteenth Amendment by rezoning certain similarly situated property to permit residential construction, but denying the same treatment to the Plaintiffs' property.

(Memo Contra Miami County SJM at 11.) While this second equal protection claim is indeed different from the claim made in original declaratory judgment action and thus issue preclusion is not involved, the question under claim preclusion analysis is whether this claim could have been brought in either of the prior actions. Plaintiffs assert it could not because

>it is explicitly premised on at least one occurrence that had not taken place at the time of their previous equal protection claim had been filed. Specifically, in their complaint, the Plaintiffs allege that "On January 26, 2005, a property located within Concord Township was rezoned Residential."

*Id*. at 12. Yet Plaintiffs fail to plead or explain how that one rezoning is significant. Nothing is said either in the Complaint or the motion papers to suggest this rezoning is any different from prior rezonings from agricultural to residential granted by the Miami County Commissioners but not overturned by referenda. The ¶ 17 of the Complaint describes substantial residential developments to the south, north, and east of the Property, one of which is described as thirty years old. Plaintiffs

could have brought the same equal protection claim they now advance in their original Common Pleas action because all the facts necessary to the claim then existed – Miami County had already rezoned land residential (including the property), but Plaintiffs had been treated differently from other Concord Township landholders because they had been subjected to the referenda.  To permit Plaintiffs to resurrect that claim now, based on the addition of one more rezoning, would be to allow them to "split" their cause of action.  See Restatement of Judgments, Second §24.

**Plaintiffs' Third Cause of Action**

As noted above, Plaintiffs' third claim for relief merely seeks declaratory judgment with respect to the constitutional claims alleged in the first and second claims.  Because the first and second claims are extinguished by the prior state court judgments, Plaintiffs are not entitled to any declaratory relief.

**Conclusion**

In accordance with the foregoing opinion, the Court concludes there are no genuine issues of fact and Defendants are entitled to judgment as a matter of law.  The Motions for Summary Judgment are granted.  The Clerk will enter judgment dismissing the Complaint with prejudice.

March 11, 2006.

s/ Michael R. Merz<br>Chief United States Magistrate Judge